Marc P. Berger
Lara Shalov Mehraban
Adam S. Grace
Todd D. Brody
Rhonda L. Jung
Teresa A. Rodriguez
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
Phone: (212) 336-0080 (Brody)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : |
| Plaintiff, | : |
| -against- | : **COMPLAINT** |
| **RULESS PIERRE A/K/A RULES PIERRE** | : 19 Civ. 10299 (___) |
| Defendant, | : |
| -and- | : **JURY TRIAL DEMANDED** |
| **R. PIERRE CONSULTING GROUP LLC,** | : |
| Relief Defendant. | : |

---

Plaintiff Securities and Exchange Commission, for its Complaint against Defendant Ruless Pierre A/K/A Rules Pierre ("Pierre") ("Defendant"), and R. Pierre Consulting Group LLC ("RPCG") ("Relief Defendant") alleges as follows:

## SUMMARY OF THE ALLEGATIONS

1. Pierre fraudulently obtained millions of dollars from investors promising impossibly high returns from securities trading and, instead, used stolen money and new investor money to make occasional distributions and to induce investors to reinvest their money with him.

2. From at least March 2017, Pierre ran an investment club called the Amongst Friends Investment Group ("Amongst Friends"). Investors, who were largely Haitian New Yorkers, received "Investment Promissory Note[s]" (the "Notes"), promising unrealistically high rates of return of at least 20% every 60 days. As described, the Notes were to be repaid through stock trading profits, and Pierre would receive the profits in excess of the fixed returns he promised to investors.

3. Instead of generating profits, however, Pierre sustained such significant trading losses that he needed to use new investor funds to make the interest payments to earlier investors. Pierre also used money that he embezzled from a former employer to make the interest payments.

4. Pierre hid the investment losses both from existing investors -- who often invested additional funds and/or reinvested their purported interest payments -- and new investors. Pierre also made affirmative misrepresentations about his investing profits.

5. Pierre raised more than $2 million from at least 100 investors in the Amongst Friends Notes. Pierre deposited investor funds in Relief Defendant RPCG's bank accounts.

6. Starting in or about November 2018, Pierre sold silent partnership interests in a fast food franchise, with agreements promising guaranteed returns of 5% per month (60% per annum) plus profit sharing of 40% of the franchise gross operating profits ("Franchise Agreements").

7. At the time he sold these interests, Pierre knew, or was reckless in not knowing, that the franchise could not provide sufficient returns to pay investors. In order to make up the shortfall, Pierre misappropriated money from the Amongst Friends investors to pay the franchise investors.

8.      Pierre raised at least $375,000 from approximately 19 investors in the Franchise Agreements.

## VIOLATIONS

9.      Defendant has engaged in, and unless enjoined, will continue to engage, directly or indirectly, in transactions, acts practices and courses of business that constitute violations of Sections 17(a)(1), (2) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1), (2) and (3)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c)]; Section 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6 (4)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

10.     Unless the Defendant is permanently restrained and enjoined, he will again engage in the acts, practices, transactions, and courses of business set forth in this Complaint and in acts, practices, transactions, and courses of business of similar type and object.  Defendant should also be ordered to disgorge any ill-gotten gains or benefits derived as a result of his violations, whether realized, unrealized or received, and prejudgment interest thereon, and ordered to pay appropriate civil money penalties.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

11.     The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)].

12.     The Commission seeks a final judgment:  (a) permanently enjoining the Defendant from future violations of the securities laws provisions that the Defendant violated as alleged in this Complaint; (b) ordering the Defendant to disgorge all ill-gotten gains and to pay

prejudgment interest on those amounts; (c) imposing civil money penalties on the Defendant pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and (d) such other relief as the Court deems just and appropriate.

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)], Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa], and Sections 209 and 214 of the Advisers Act [15 U.S.C. §§ 80b-9 and 80b-14].

14. Venue is proper in the Southern District of New York pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], Section 214 of the Advisers Act [15 U.S.C. § 80b-14]. Defendant resides in the Southern District of New York and certain of the acts, transactions, practices and courses of business alleged herein took place in the Southern District of New York. Defendant solicited funds from investors and prospective investors that reside in the Southern District of New York.

15. The Defendant, directly and indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails and wires, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

**DEFENDANT**

16.     **Ruless Pierre a/k/a Rules Pierre ("Pierre")**, 49, resides in Nanuet, New York. Beginning in or about 2007, Pierre worked for a company ("Management Company 1"), that managed Conference Center 1 and Conference Center 2, (collectively, the "Conference Centers"). Pierre was the controller of the Conference Centers. In or about 2016, Conference Center 1 was sold and a new company took over the management of Conference Center 1 ("Management Company 2"). After the sale, Pierre was hired by Management Company 2 as the Director of Finance for Conference Center 1 until he resigned in August 2018. After 2016, Pierre no longer worked for Conference Center 2.

**RELIEF DEFENDANT**

17.     **R. Pierre Consulting Group LLC ("RPCG")**, is a New York limited liability company formed in November 2017. Pierre is the sole member of RPCG, whose principal place of business is Pierre's residence in Nanuet, New York.

**FACTS**

**The Amongst Friends Investment Scheme**

   A.  **Background of the Amongst Friends Investment Group**

18.     In or about 2016, Pierre formed an informal investment club in which he, his brothers, sister, and a few friends each contributed approximately $2,500 in an effort to generate passive income. Club members suggested specific stocks that they had researched and the group decided which stocks to purchase.

19.     Beginning in or about 2017, Pierre formalized the investment club, called it Amongst Friends, and expanded it beyond the initial family and friends. By this time, members were no longer involved in investment decisions; but instead relied solely on Pierre's efforts.

5

### B. Pierre Begins to Issue Promissory Notes

20. In or about 2017, Pierre began issuing Notes to investors using the Amongst Friends name.

21. While the terms of the Notes varied, they were similar in several key aspects: (1) The Notes each contained exceptionally high rates of return, from 20% interest every 60 days to as high as 40% interest every 60 days. While most of the Notes used the term "interest," some stated "interest/profit sharing." (2) The Notes all lacked maturity dates and instead indicated that they were to be repaid "upon dissolution" or within 30 days of the investor's "request to exit the group." (3) The Notes all stated that "[t]he purpose of the investment group is to invest the assets of the group in stocks, other securities, Digital Currencies, commercial & Residential Rental property."

22. Under the terms of the Notes, Pierre would have retained any profits in excess of the rates of return promised to the investors.

23. Pierre orally represented to investors that he personally guaranteed the return of their principal. Some of the Notes explicitly stated that the investment was personally guaranteed by Pierre and several purported to be collateralized by a rental property that he owns (with his wife) in Nyack, New York.

### C. Pierre Forms RPCG, Opens Brokerage Accounts, and Commingles Funds

24. Pierre formed RPCG in November 2017, and used the RPCG name in communications with investors. Pierre also opened bank accounts in RPCG's name.

25. Prior to November 2017, Pierre deposited Amongst Friends investor monies in bank accounts held in his own name. From November 2017 forward, investor monies were mostly deposited in RPCG's bank accounts.

26. Pierre transferred Amongst Friends investors' funds from the bank accounts and pooled them in brokerage accounts held in his own name at various broker dealers (collectively, the "Brokerage Accounts"). The Brokerage Accounts were opened before Amongst Friends was started and contained Pierre's personal funds and positions that he had purchased with his own funds. Accordingly, Pierre's own funds were comingled with investor funds.

**D.    Pierre's Trading, Losses, and "Interest" Payments**

27. Pierre traded in only equities on behalf of Amongst Friends.

28. Beginning in 2017 and each year thereafter, Pierre lost money trading equities on behalf of the investors. Specifically, in 2017, Pierre's trading in the Brokerage Accounts resulted in losses of approximately $313,243. In 2018, Pierre's trading in the Brokerage Accounts resulted in losses of approximately $986,914. From January through March 2019, Pierre's trading in the Brokerage Accounts resulted in losses of approximately $125,241.

29. Pierre lost all of the investor money that he deposited in the Brokerage Accounts. From 2017 through March 2019, Pierre deposited approximately $1,404,408 in the Brokerage Accounts and suffered approximately $1,425,898 in trading losses.

30. At some point in 2017, it became clear that the rate of return that he was paying the investors was unsustainable. By at least this time, Pierre knew or was reckless in not knowing that the Notes he was continuing to sell could not be paid with investment returns. Nevertheless, he continued to issue Notes promising the same high rates of return.

31. Pierre never told investors about the losses in the Brokerage Accounts. For those investors who chose not to accrue interest, Pierre made significant "interest" payments, despite the large losses in the Brokerage Accounts, by using new investor money to fund the payments.

32. Several investors made new investments after receiving interest payments,

including one investor who talked her husband into joining Amongst Friends after receiving her first $10,000 interest payment.

33. In addition to using new investor money to fund the payments, Pierre used some portion of funds that he misappropriated from the Conference Center's bank accounts to make interest payments to investors. Specifically, as the controller of the Conference Centers, Pierre was the signatory on several bank accounts for both Conference Center 1 and Conference Center 2. When Conference Center 1 was sold in 2016, there were funds remaining in the accounts. Pierre took money from these accounts, writing checks to "Cash" and "Petty Cash," even though he had no right to do so. He continued transferring funds from those accounts to himself (in cash) even after his employment with Management Company 2 ended, until the entity in control of the accounts closed them.

E. **Pierre's Efforts to Conceal His Scheme**

34. Pierre concealed from the Amongst Friends investors that he was using new investor monies to pay earlier investors, and that investor returns were going to be funded in part with cash that Pierre misappropriated from his former employer.

35. On various dates from at least June 1, 2018 through March 26, 2019, Pierre concealed the massive investment losses by providing several investors with "Balance Verification Letters" falsely reflecting the guaranteed 10% monthly interest accrual and ever increasing balances in their "accounts."

36. After August 2018, in conversations with at least two investors, Pierre also falsely stated that his trading activity was so lucrative that he left a highly-compensated position as a corporate executive to trade full-time.

37. Pierre's misleading omissions and false statements induced current investors to

8

purchase additional Notes, lured new investors into Amongst Friends, and enabled the scheme to continue to attract additional investment monies.

38.     Pierre raised more than $2 million from at least approximately 100 investors in the Amongst Friends fraud.

**The Franchise Investment Scheme**

39.     At some point before 2018, one of Pierre's friends, who was an Amongst Friends investor, told Pierre that he was interested in selling three fast food franchises.

40.     Beginning in or about November 2018 and continuing through at least June 2019, using a documented titled, "Silent Partnership Agreement," Pierre offered investors the opportunity to purchase partnership interests in the fast food franchises (the "Franchise Agreements").

41.     The Franchise Agreements promised a combination of both an unusually high fixed interest rate (5% monthly returns) plus a pro rata share of 40% of the franchises' gross operating profits.

42.     Pierre deposited the franchise investor money into bank accounts in the name of Relief Defendant RPCG.

43.     Pierre used a portion of the franchise investor's money to pay Amongst Friends investment returns.

44.     Beginning in or about December 2018, Pierre made interest payments to the franchise investors, even though he had not yet purchased any of the franchise locations.

45.     Pierre used funds from the commingled Amongst Friends and franchise investor monies, to cover the interest payments he had promised the Franchise Investors.

46.     At some point on or before January 2019, Pierre received financial statements for

each of the three franchise locations, which showed minimal profits, if any, over the prior several years.  For example, the financial statements for the franchise location in Orangeburg, NY showed profits of $11,790 in 2015, $30,823 in 2016, and only $3,662 in 2017.

47.     Pierre continued to sell Franchise Agreements after receiving these financial statements, even though he did not have a reasonable basis to believe the profits from any fast food franchise could pay the fixed interest rate he promised.

48.     In or about May 1, 2019, Pierre purchased the Orangeburg franchise location for $50,000.  Pierre never purchased the other two franchise locations.

49.     Shortly after the purchase of the Orangeburg franchise location, Pierre misappropriated at least $6,436 from the franchise investment monies held in Relief Defendant RPCG's bank account by overinflating the amounts owed to the franchise's soda vendor and cashing checks payable to "Cash."

50.     Bank records for the franchise indicate that the Orangeburg franchise location had not generated sufficient funds to repay franchise investors the promised rates of return.

51.     From November 2018 through June 2019, Pierre raised at least $375,000 by selling these Franchise Agreements to approximately 19 investors.  The franchise investors were comprised of Amongst Friends investors as well as new investors.

**Relief Defendant RPCG Holds Proceeds of the Fraud**

52.     Relief Defendant RPCG has cash in its bank accounts that belongs to Amongst Friends investors and franchise investors.  The only identifiable deposits in the accounts were investor proceeds, cash, and minimal revenue generated from the Orangeburg franchise.

## FIRST CLAIM FOR RELIEF
**Violations of Section 17(a) of the Securities Act**

53. The Commission realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 52.

54. The Notes and the Franchise Agreements are securities.

55. Defendant Pierre, directly or indirectly, knowingly, recklessly, or negligently, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce, or by use of the mails: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices or courses of business which operated or would have operated as a fraud or deceit upon purchasers of securities.

56. By reason of the foregoing, Defendant Pierre directly or indirectly, violated Section 17(a)(1), (2), and (3) of the Securities Act [15 U.S.C. § 77q(a)(1), (2), and (3)].

## SECOND CLAIM FOR RELIEF
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

57. The Commission re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 52.

58. The Notes and the Franchise Agreements are securities.

59. Defendant Pierre, directly or indirectly, knowing or recklessly, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact, necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon persons, in connection with the purchase or sale of securities.

60. By engaging in the conduct alleged above, Defendant Pierre violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b) and (c)].

### THIRD CLAIM FOR RELIEF
### Violations of Section 206(4) and Rule 206(4)-8 of the Advisers Act

61. The Commission re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 38 and Paragraph 52.

62. By engaging in the conduct described above, Defendant Pierre, directly or indirectly, knowingly or recklessly, by use of the means or instrumentalities of interstate commerce: (1) made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, to investors or prospective investors in Amongst Friends; and (2) otherwise engaged in acts, practices or courses of business that were fraudulent, deceptive or manipulative with respect to investors or prospective investors in Amongst Friends.

63. By reason of his actions alleged herein, Defendant Pierre violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)], and Rule 206(4)-8 thereunder [17 C.F.R. 275.206(4)-8].

**PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

**I.**

Finding that the Defendant violated Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2) and (3)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c)]; Section 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(4)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8] as alleged in this Complaint;

**II.**

Permanently enjoining the Defendant, his agents, servants, employees, attorneys-in-fact and assigns, and those persons in active concert or participation with him or who receive actual notice of the injunction by personal service or otherwise, from violating Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2) and (3)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c)]; Section 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6 (4)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8] as alleged in this Complaint;

**III.**

Ordering the Defendant and Relief Defendant to disgorge any ill-gotten gains and to pay prejudgment interest.

**IV.**

Ordering the Defendant to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C.

§ 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and

## V.

Granting such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: New York, NY
November 6, 2019

                        Respectfully submitted,

By:       /s/ Marc P. Berger
Marc P. Berger
Lara Shalov Mehraban
Adam S. Grace
Todd D. Brody
Rhonda L. Jung
Teresa A. Rodriguez
*Attorneys for Plaintiff*
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
Tel: (212) 336-0080 (Brody)
BrodyT@sec.gov