UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
SECURITIES AND EXCHANGE COMMISSION,                               :
                                                                  :
                        Plaintiff,                                :
                                                                  :
              -v-                                                 :            19 Civ. 10299 (JPC)
                                                                  :
RULESS PIERRE, a/k/a "Rules Pierre,"                              :            OPINION AND ORDER
                                                                  :
                        Defendant,                                :
                                                                  :
              -and-                                               :
                                                                  :
R. PIERRE CONSULTING GROUP LLC,                                   :
                                                                  :
                        Relief Defendant.                         :
                                                                  :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

The Securities and Exchange Commission ("SEC") has brought this civil enforcement action against Ruless Pierre, a/k/a "Rules Pierre" ("Pierre"), alleging that he orchestrated fraudulent investment schemes that entailed promising investors unrealistically high returns from securities trading and ownership in fast-food restaurants and diverting some of the invested funds to finance redemption payments to investors. The SEC alleges violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and Section 206(4) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-6(4), and SEC Rule 206(4)-8 promulgated thereunder, 17 C.F.R. § 275.206(4)-8. The SEC also has named R. Pierre Consulting Group LLC as Relief Defendant for allegedly holding proceeds of the fraud.

In addition to this civil action, the U.S. Department of Justice brought a criminal prosecution in this District against Pierre arising from, *inter alia*, the same alleged conduct.  In May 2021, Pierre was found guilty after a jury trial of two counts of securities fraud, one count of wire fraud, and one count of structuring financial transactions to evade reporting requirements. Pierre subsequently was sentenced to eighty-four months' imprisonment, followed by three years of supervised release, and ordered to pay $2,030,337.32 in restitution (with $1,708,227.32 of that amount to be paid to the victims of the two securities fraud counts) and $3,701,893.91 in forfeiture (with $3,379,783.91 representing proceeds traceable to Pierre's securities fraud violations).  The Second Circuit affirmed Pierre's conviction by summary order on February 20, 2024.

Before this Court is the SEC's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), in which the SEC urges this Court to apply collateral estoppel to grant judgment against Pierre on its causes of action under Section 17(a) of the Securities Act and under Section 10(b) of the Exchange Act and Rule 10b-5.  As relief, the SEC seeks a permanent injunction enjoining Pierre from future violations of these securities laws and an order that Pierre pay disgorgement with prejudgment interest, with those amounts deemed satisfied by the restitution and forfeiture imposed in his criminal case.

Pierre does not oppose summary judgment.  For the reasons that follow, the SEC's motion for summary judgment is granted.  In addition, R. Pierre Consulting Group LLC is dismissed as Relief Defendant, as is the third cause of action under Section 206(4) of the Advisers Act and Rule 206(4)-8.  The Court further orders a permanent injunction, enjoining Pierre from future violations of Section 17(a) and of Section 10(b) and Rule 10b-5, and orders disgorgement of Pierre's ill-gotten profits in the amount of $1,708.227.32 plus prejudgment interest in the amount of $339,733.58.

# I.  Background

**A.     Factual Background[1]**

The SEC's allegations concern Pierre's operation of two fraudulent investment schemes. The first, referred to herein as the "Amongst Friends Investment Scheme," involved Pierre's formation of an investment club, with promises to investors of unrealistic investment returns. The second, referred to herein as the "Franchise Investment Scheme," entailed Pierre inducing some of the same investors, as well as new investors, to invest in fast-food restaurants, once again promising unrealistic investment returns. Each scheme is laid out below.

**1.     The Amongst Friends Investment Scheme**

Beginning in or about 2016, Pierre established an informal investment club whose membership consisted of his siblings and several friends. SEC 56.1 Stmt. ¶ 2. The investment club was formalized in 2017 under the name Amongst Friends, expanding its membership beyond

---

[1] The following facts are taken from the SEC's statement of undisputed material facts pursuant to Local Civil Rule 56.1(a), Dkt. 49 ("SEC 56.1 Stmt."), and the Declaration of Rhonda L. Jung and the exhibits attached thereto, which the SEC filed in support of its motion for summary judgment, Dkt. 50 ("Jung Decl."). The attachments to the Jung Declaration include the transcripts from Pierre's criminal trial, *id.*, Exhs. 4-13 ("Trial Tr."), the judgment of conviction, *id.*, Exh. 12, and the orders of forfeiture and restitution, *id.*, Exhs. 13-14. Pierre has not filed a responsive statement pursuant to Local Civil Rule 56.1(b), or otherwise responded to any of the facts asserted in the SEC's Rule 56.1 statement. The SEC's facts thus are deemed admitted. *See T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."); *SEC v. LaGuardia*, No. 19 Civ. 895 (ALC), 2023 WL 4266014, at *1 (S.D.N.Y. June 29, 2023) ("[T]he failure to respond [to a Rule 56.1 statement] may allow the district court to accept the movant's factual assertions as true." (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)); Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."). Nonetheless, the Court has confirmed that each fact asserted in the SEC's Rule 56.1 statement relied upon in this Opinion and Order finds support in its corresponding citation to the record.

the initial group of Pierre's family and friends. *Id.*   Pierre issued notes to Amongst Friends investors (the "Notes"), promising "exceptionally high rates of return, from 20% interest every 60 days to as high as 40% interest every 60 days." *Id.* ¶ 3; *see* Dkt. 48 ("SEC Br.") at 1.  Pierre further personally guaranteed investors the return of their principal; some Notes even memorialized that the investment was guaranteed by Pierre himself and/or was collateralized by property that he owned.  SEC 56.1 Stmt. ¶ 4.

While Pierre did indeed trade equities on behalf of Amongst Friends investors, he began to incur significant losses starting in 2017, suffering over $1.4 million in losses by March 2019.  *Id.* ¶¶ 5-6; *see id.* ¶ 38 ("At Pierre's trial, the Government introduced Mr. Pierre's testimony taken during the [SEC]'s investigation that he lost money in his trading accounts in 2017 and 2018.") (citing Trial Tr. at 900)).  Notwithstanding these staggering losses and the obvious consequence that the ongoing payments to investors of their promised returns would not be possible, Pierre continued to issue the Notes with assurances of the same inflated rates of returns.  *Id.* ¶ 7.  He did so despite knowing, or being reckless in not knowing, that the promised returns could not be paid.  *Id.*

Rather than disclosing the reality, Pierre deceived his investors by concealing the sizable trading losses.  *Id.*  ¶¶ 8-11.  As to those investors who chose not to accrue their returns, Pierre still made significant supposed "interest" payments, but those payments were funded either by new investor funds or by money Pierre misappropriated from his employer. *Id.* ¶¶ 8-9.  Pierre concealed the sources of these "interest" payments from his investors.  *Id.* ¶ 10.  Pierre additionally concealed the investment losses by providing some of his Amongst Friends "investors with 'Balance Verification Letters,' falsely reflecting the guaranteed 10% monthly interest accrual and even increasing the balances in their 'accounts.'" *Id.* ¶ 11.  As a result, then-current investors

bought additional Notes and new investors joined Amongst Friends, thus bringing in more money to keep the fraudulent scheme afloat.  *Id.*

Witnesses at Pierre's criminal trial gave insight as to how the Amongst Friends Investment Scheme operated.  Shayna Kushner, an Amongst Friends investor, testified that she invested $18,000 in Amongst Friends after Pierre promised 20% of her investment every two months as her profits.  *Id.* ¶ 27.  She explained that, prior to investing, Pierre showed her a stock platform on his computer to demonstrate his trading success, that Pierre assured her that she could receive her money back provided she gave him a little notice, and that Pierre said he owned property that served as collateral for her investment and had a reserve account so he could pay investors back. *Id.*  Ms. Kushner additionally explained that, after she invested, Pierre provided her with account statements purporting to show growth in her account.  *Id.*  Yet, according to Ms. Kushner, Pierre ultimately returned only $3,000 of the $18,000 she invested.  *Id.*  Ms. Kushner's trial testimony largely was largely consistent with that of other victims of the Amongst Friends Investment Scheme.  *See id.* ¶¶ 28 (summarizing testimony from Elizabeth Pamphile, who was a victim of both schemes and testified that she invested about $490,000 and was promised 20% returns for her Amongst Friends investment), 29 (summarizing testimony from Frantz Joseph, who was a victim of both schemes and testified that he received back only $40,000-to-$50,000 of the roughly $196,000 he invested), 30 (summarizing testimony from Fonderre Lionel Musongong, who was a victim of both schemes and testified that he received back only $3,000 of the $49,000 he invested), 31 (summarizing testimony from Tamara Aristilde, a victim of the Amongst Friends Investment Scheme who testified that she invested $10,000 and, when Pierre later issued a check to her for that amount, the check bounced).  Mr. Musongong additionally testified that Pierre directed him to lie to the SEC if asked about the size of his investment, *see id.* ¶ 30, while Ms. Pamphile similarly

testified that Pierre directed her to lie about the amount she invested if contacted by the Department of Homeland Security, *see id.* ¶ 28.

Courtney McLaughlin, a criminal analyst at Homeland Security Investigations who also testified at the criminal trial, estimated that Pierre received over $2,532,130.91 from investors in connection with the Amongst Friends Investment Scheme. *Id.* ¶ 37.  Ms. McLaughlin further testified that checks in the amount of $1,178,353.43 were written from a checkbook associated with Pierre's employer to cash or petty cash after February 12, 2016, and that checks in the amount of $322,110 were written from that checkbook to cash or petty cash after September 6, 2018. *Id.* She additionally testified that $3,861,390 was sent to various trading accounts that Pierre controlled; that $1,973,170 was withdrawn from those accounts; and that, from November 2016 through November 2019, the highest monthly balance in those accounts was $234,209. *Id.*[2]

### 2.    The Franchise Investment Scheme

At some point prior to 2018, a friend informed Pierre that he was interested in selling three fast-food franchises (the "Franchises"). *Id.* ¶ 12.  After learning this information, and prior to actually purchasing any of the Franchises, Pierre offered potential investors the opportunity to acquire partnership interests in the Franchises (the "Franchise Agreements"). *Id.*  As was the case with the Notes issued to Amongst Friends investors, the Franchise Agreements promised unusually high fixed interest rates, and further guaranteed investors a pro-rata share of 40% of the Franchises' gross operating profits. *Id.* ¶ 13.  Pierre began making the interest payments in December 2018,

---

[2] At his criminal trial, Pierre offered testimony from Joshua Dennis, a partner at a global advisory firm who performed a data analysis on behalf of Pierre.  SEC 56.1 Stmt. ¶ 39.  Mr. Dennis testified that Amongst Friends investors transferred $3,160,732 to Pierre, that Pierre transferred $2,941,116 of those funds to securities trading accounts he controlled, and that Pierre, who experienced some months of gains but mostly months of losses, suffered trading losses and fees that totaled $1,477,889 during the period of October 2016 through March 31, 2019. *Id.*

despite not yet having purchased any of the Franchises.  *Id.*  He did so with commingled funds invested by Amongst Friends and Franchise investors.  *Id.*

In or about May 2019, Pierre finally purchased one of the Franchises, located in Orangeburg, New York; he never acquired the other two.  *Id.* ¶ 14.  Before making this purchase, Pierre received financial statements for each of the three Franchise locations, which revealed that they had generated minimal profits over the prior several years.  *Id.*  Michael Sherman, the individual who sold the Orangeburg Franchise to Pierre, testified at the criminal trial that he had provided Pierre with profit and loss statements for the three Franchises and that the average profit for each Franchise was approximately $40,000 per year.  *Id.* ¶ 32 (citing Trial Tr. at 218, 222).  Mr. Sherman further testified that he and his business partner explained to Pierre that "this is a business where you're not going to generate a tremendous amount of income.  You are buying a job.  You are going to make a little bit of money at each store.  If you do additional things, you can make additional income."  Trial Tr. at 273.  Despite receiving this information and lacking any reasonable basis to believe the Franchises' financial profits could pay the returns promised to investors, Pierre continued to sell the Franchise Agreements, assuring investors the same unrealistic fixed rates of return.  SEC 56.1 Stmt. ¶ 15.

Testimony at Pierre's criminal trial also revealed how the Franchise Investment Scheme worked.  Mr. Joseph, a victim in both the Amongst Friends Investment Scheme and the Franchise Investment Scheme, testified that he invested approximately $196,000 in total, money which came from his and his wife's 401k.  *Id.* ¶ 29.  With respect to the Franchise Investment Scheme, Mr. Joseph testified that Pierre told him that investors would receive 40% of the restaurants' quarterly profits as well as a monthly profit-sharing distribution.  *Id.*  According to Mr. Joseph, Pierre said that he had purchased two Franchises, and that he expected to achieve annual profits of

approximately $700,000 once he acquired all three. *Id.*; *see also id.* ¶ 30 (summarizing Mr. Musongong's testimony that Pierre said he had already purchased two Franchises, that these Franchises were doing well, and that he planned to buy a third).

**B.    Procedural History**

The SEC initiated this action on November 6, 2019, alleging that Pierre violated various federal securities laws by executing the two aforementioned schemes. Dkts. 1, 4 ("Compl.") ¶¶ 18-38 (allegations concerning the Amongst Friends Investment Scheme), 39-51 (allegations concerning the Franchise Investment Scheme). The SEC alleges that Pierre violated Sections 17(a)(1), (2), and (3) of the Securities Act, *id.* ¶¶ 53-56 ("First Cause of Action"); Section 10(b) of the Exchange Act and Rule 10b-5, *id.* ¶¶ 57-60 ("Second Cause of Action"); and Section 206(4) of the Advisers Act and Rule 206(4)-8, *id.* ¶¶ 61-63 ("Third Cause of Action"). The Complaint further alleges that Relief Defendant R. Pierre Consulting Group LLC "has cash in its bank accounts that belongs to Amongst Friends investors and franchise investors." *Id.* ¶ 52.

On the same date that this civil action was initiated, a criminal indictment charging Pierre was unsealed in this District. *United States v. Pierre*, No. 19 Cr. 783 (SHS) (S.D.N.Y.), Dkts. ("Criminal Dkt.") 2, 3. On January 19, 2021, the grand jury returned a superseding indictment charging Pierre with two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 77ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2; one count of wire fraud in violation of 18 U.S.C. §§ 1343 and 2; and one count of structuring financial transactions to evade reporting requirements in violation of 31 U.S.C. §§ 5324(a), 5313(a), and 5325, and 18 U.S.C. § 2. Criminal Dkt. 37 ("Superseding Indictment"). Thus, the Superseding Indictment charged Pierre with two counts of criminally violating the same securities fraud provisions—Section 10(b) of the Exchange Act and Rule 10b-5—that are alleged in the Second Cause of Action of the Complaint, *see* Complaint

¶¶ 57-60.  Further, those securities fraud counts in the Superseding Indictment were based on essentially the same factual allegations contained in the Complaint.  *Compare* Superseding Indictment ¶¶ 4-9 (allegations concerning "The Promissory Note Investment Fraud Scheme") *with* Compl. ¶¶ 18-38 (allegations concerning the Amongst Friends Investment Scheme); *compare* Superseding Indictment ¶¶ 12-16 (allegations concerning "The Franchise Investment Scheme") *with* Compl. ¶¶ 39-51 (allegations concerning the Franchise Investment Scheme).  On April 2, 2020, the Honorable J. Paul Oetken, to whom this case was then assigned, stayed this case pending resolution of the criminal action.  Dkt. 13.

Pierre's criminal trial began before the Honorable Sidney H. Stein on May 17, 2021.  SEC 56.1 Stmt. ¶ 23; Trial Tr. at 1.  On May 27, 2021, after an eight-day trial, the jury returned guilty verdicts on all four counts.  SEC 56.1 Stmt. ¶ 51; Trial Tr. at 1203.  On May 26, 2022, Judge Stein sentenced Pierre to a term of imprisonment of eighty-four months, followed by three years of supervised release.  SEC 56.1 Stmt. ¶ 55; Criminal Dkt. 116 ("Judgment of Conviction") at 3; Criminal Dkt. 122 ("Sentencing Tr.") at 52, 57-58.  Judge Stein also entered an order of forfeiture and money judgment against Pierre in the amount of $3,701,893.91, with $3,379,783.91 representing proceeds traceable to Pierre's securities laws violations.  SEC 56.1 Stmt. ¶ 56; Criminal Dkt. 113 (preliminary order of forfeiture and money judgment); Judgment of Conviction at 8; Sentencing Tr. at 55.  Judge Stein additionally ordered restitution in the amount of $2,030,337.32, with $1,708,227.32 to be paid to victims of the Amongst Friends Investment Scheme and the Franchise Investment Scheme.  SEC 56.1 Stmt. ¶ 57; Criminal Dkt. 114 (order of restitution); Judgment of Conviction at 7; Sentencing Tr. at 53-54.

On May 30, 2022, the undersigned, to whom this case had since been transferred, lifted the stay in light of Pierre's conviction.  Dkt. 39 at 2.  The SEC moved for summary judgement on

September 14, 2022, seeking judgment against Pierre on the First and Second Causes of Action. Dkts. 47-50.[3]  In addition, the SEC seeks a permanent injunction enjoining Pierre from future violations of Section 17(a) of the Securities Act and of Section 10(b) of the Exchange Act and Rule 10b-5, as well as an order of disgorgement against him.  *See* SEC Br. at 17-21.  Pierre's deadline to oppose the SEC's summary judgment motion was December 14, 2022.  Dkt. 46.  He filed no opposition by that date, however, nor has he filed an opposition at any point.[4]

While the SEC's summary judgment motion was pending, Pierre appealed his criminal conviction.  *See* Criminal Dkt. 121.  On August 30, 2023, this Court stayed proceedings in this civil action pending resolution of the criminal appeal.  Dkt. 53.  On February 22, 2024, the Second Circuit affirmed Pierre's conviction, holding, *inter alia*, that the Government presented sufficient evidence for the jury to conclude that the Amongst Friends Investment Scheme involved "securities" within the meaning of the Exchange Act and that Pierre acted with the requisite fraudulent intent.  *United States v. Pierre*, No. 22-1274-cr, 2024 WL 676373, at *1-3 (2d Cir. Feb 20, 2024) (summary order).  During an April 16, 2024 telephonic conference, the Court confirmed the parties' agreement that the stay should be lifted given the Second Circuit's affirmance of Pierre's conviction.  Apr. 16, 2024 Minute Entry; *see* Dkt. 56.  Pierre also advised during this

---

[3] In their moving brief, the SEC states that it "voluntarily dismisses its claims against Pierre under Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)], and Rule 206(4)-8 thereunder [17 C.F.R. 275.206(4)-8] and its claim for civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]."  SEC Br. at 2 n.1 (brackets in original).  The SEC further states that it "voluntarily dismisses its claims against Relief Defendant R. Pierre Consulting Group, LLC."  *Id.*  Accordingly, the Court dismisses without prejudice the Third Cause of Action against Pierre and all claims against R. Pierre Consulting Group, LLC.

[4] At the Court's direction, on August 23, 2023, the SEC served a copy of the notice required by Local Civil Rule 56.2 on Pierre via overnight mail to his address at the United States Penitentiary Canaan.  Dkt. 52 at 1.

conference that he did not intend to oppose the SEC's motion for summary judgment.  Apr. 16, 2024 Minute Entry.

## II.  Legal Standards

### A.    Summary Judgement

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  "If the moving party meets its initial burden, the nonmoving party must then 'set forth specific facts showing that there is a genuine issue for trial' using affidavits or other evidence in the record, and cannot rely on the 'mere allegations or denials' contained in the pleadings."  *Taylor v. City of New York*, No. 19 Civ. 6754 (KPF), 2022 WL 744037, at *6 (S.D.N.Y. Mar. 11, 2022) (quoting *Anderson*, 477 U.S. at 248); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("[A] nonmoving part[y] . . .  may not rely on conclusory allegations or unsubstantiated speculation . . . [and] must offer some hard evidence showing that its version of the events is not wholly fanciful." (internal quotation marks omitted)).

11

Pierre is proceeding *pro se*. The Court must construe *pro se* submissions "liberally" and interpret them "to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam) (internal quotation marks omitted). "[T]he same standards for summary judgment apply" for a *pro se* litigant, "but [a] *pro se* litigant should be given special latitude in responding to a summary judgment motion." *Roundtree v. New York City*, No. 15 Civ. 8198 (JPC), 2021 WL 4504471, at *4 (S.D.N.Y. Sept. 30, 2021) (internal quotation marks omitted). Here, as discussed, not only has Pierre neither opposed the SEC's motion for summary judgment nor responded to the SEC's statement of undisputed material facts, but he recently advised the Court that he does not intend to oppose that motion. The Court nonetheless has thoroughly reviewed the record to ensure that summary judgment is appropriate. *See LaGuardia*, 2023 WL 4266014, at *3 ("Defendant concedes that Plaintiff is entitled to summary judgment based on the undisputed facts in this case. Nonetheless, the Court is obligated to review the record to ensure that Plaintiff[ is] entitled to a summary judgment." (internal citation omitted) (citing *Vt. Teddy Bear Co.*, 373 F.3d at 242)).

**B.      Collateral Estoppel**

Under the doctrine of offensive collateral estoppel, a plaintiff may preclude "a defendant from relitigating an issue the defendant has previously litigated but lost against another plaintiff." *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 303 (2d Cir. 1999) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979)). For the doctrine to apply, "a plaintiff must show that: (1) the issues in both proceedings are identical; (2) the relevant issues were actually litigated and actually decided in the prior proceeding[]; (3) there was a full and fair opportunity for the litigation of the issues in the prior proceeding; and (4) the issues were necessary to support a valid and final judgement on the merits." *Roe v. City of Waterbury*, 542 F.3d 31, 41 (2d Cir. 2008) (internal

quotation marks omitted); *accord SEC v. Haligiannis*, 470 F. Supp. 2d 373, 382 (S.D.N.Y. 2007) (quoting *NLRB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999)).

A plaintiff may invoke collateral estoppel as a basis for summary judgment.  *See Parklane Hosiery Co.*, 439 U.S. at 324, 337.  The moving party bears the burden of showing that the issues decided are identical, while the nonmoving party has the burden of demonstrating a lack of a full and fair opportunity to litigate the prior action.  *See SEC v. Tzolov*, No. 08 Civ. 7699 (SAS), 2011 WL 308274, at *1 (S.D.N.Y. Jan. 26, 2011); *accord SEC v. McGinn, Smith & Co., Inc.*, No. 10 Civ. 457 (GLS/CFH), 2015 WL 667848, at *6 (N.D.N.Y. Feb. 17, 2015).  "Trial courts have 'broad discretion' in applying offensive collateral estoppel and should decline to do so where it 'would be unfair to a defendant.'"  *Gordon v. Sonar Cap. Mgmt. LLC*, 116 F. Supp. 3d 360, 364 (S.D.N.Y. 2015) (quoting *SEC v. Mattera*, No. 11 Civ. 8323 (PKC), 2013 WL 6485949, at *7 (S.D.N.Y. Dec. 9, 2013)).

With respect to the scenario presented here, a criminal conviction "constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case."  *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978) (citations omitted); *see also Maietta v. Artuz*, 84 F.3d 100, 102 n.1 (2d Cir. 1996).  This is because "[t]he government bears a higher burden of proof in the criminal than in the civil context."  *SEC v. Shehyn*, No. 04 Civ. 2003 (LAP), 2010 WL 3290977, at *3 (S.D.N.Y. Aug. 9, 2010) (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986)).  "Perhaps the most attractive cases that have extended issue preclusion from criminal convictions to civil actions involve claims by the government for civil remedies based on the same transaction that gave rise to the conviction."  *Mattera,* 2013 WL 6485949, at *7 (quoting 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4474 (2d ed.)).

### III.  Discussion

The SEC has moved for summary judgment on its First Cause of Action under Section 17(a) of the Securities Act and its Second Cause of Action under Section 10(b) of the Exchange Act and Rule 10b-5, on the grounds that collateral estoppel prevents Pierre from relitigating issues that were resolved in his criminal case.  For reasons that follow, the Court finds that the SEC has met its burden for summary judgment on these two causes of action, and that injunctive relief and disgorgement are warranted.

### A.    Pierre's Liability Under the First and Second Causes of Action

To determine whether the legal and factual issues raised in a subsequent civil action are identical to a prior criminal proceeding, "courts routinely compare the criminal indictment with the civil complaint."  *McGinn, Smith & Co.*, 2015 WL 667848, at *9 (collecting cases).  Here, the SEC's civil complaint and the Superseding Indictment contain largely identical factual allegations with respect to Pierre's conduct in the Amongst Friends Investment Scheme and the Franchise Investment Scheme.   *Compare* Superseding Indictment ¶¶ 4-9 (allegations concerning "The Promissory Note Investment Fraud Scheme") *with* Compl. ¶¶ 18-38 (allegations concerning the Amongst Friends Investment Scheme); *compare* Superseding Indictment ¶¶ 12-16 (allegations concerning "The Franchise Investment Scheme") *with* Compl. ¶¶ 39-51 (allegations concerning the Franchise Investment Scheme).  Moreover, the evidence adduced at the criminal trial likewise mirrored the allegations underlying the First and Second Causes of Action.  *See* SEC 56.1 Stmt. ¶¶ 27-39.

The legal issues implicated in the civil Complaint and the Superseding Indictment also are identical.  Starting with the Second Cause of Action, Pierre was convicted in the criminal case of violating the same legal provisions—securities fraud in violation of Section 10(b) of the Exchange

Act and Rule 10b-5—that are alleged in that cause of action.  Section 10(b) makes it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."  15 U.S.C. § 78j(b).  The SEC, in turn, promulgated Rule 10b-5, which makes it illegal, "in connection with the purchase or sale of any security," "[t]o employ any device, scheme, or artifice to defraud"; "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading"; or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."  17 C.F.R. § 240.10b-5.  As relevant here, a violation of Section 10(b) and Rule 10b-5 requires proof that the defendant "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities."  *Haligiannis*, 470 F. Supp. 2d at 381 (quoting *Monarch Funding Corp.*, 192 F.3d at 308).  "A false statement [is] made with the requisite scienter if it was made with the intent to deceive, manipulate, or defraud."  *SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (internal quotation marks omitted) (quoting *SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012)).

With respect to the First Cause of Action, Section 17(a) of the Securities Act makes it unlawful for "any person in the offer or sale of any securities" "directly or indirectly" either:

> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15

15 U.S.C. § 77q(a).  The standard to establish a Section 17(a) violation "is 'essentially the same'" as the standard for a Section 10(b) violation, "'though no showing of scienter is required for the SEC to obtain an injunction under subsections (a)(2) or (a)(3).'"  *Haligiannis*, 470 F. Supp. 2d at 481 (quoting *Monarch Funding Corp.*, 192 F.3d at 308); *accord LaGuardia*, 2023 WL 4266014, at *4.  Thus, "[c]ourts in this Circuit 'have applied collateral estoppel in the securities fraud context because the elements necessary to establish civil liability under Section[s] 17(a) and 10(b) are identical to those necessary to establish criminal liability under Section 10(b)."  *SEC v. Genovese*, 553 F. Supp. 3d 24, 41 (S.D.N.Y. 2021) (alteration in *Genovese*) (quoting *Haligiannis*, 470 F. Supp. 2d at 482); *see, e.g.*, *SEC v. Roor*, No. 99 Civ. 3372 (HB), 2004 WL 1933578, at *7 (S.D.N.Y. Aug. 30, 2004) (granting summary judgment on Section 17(a) and Section 10(b) claims upon concluding that the defendant was estopped from contesting liability based on his guilty plea to violating Section 10(b)); *SEC v. McCaskey*, No. 98 Civ. 6153 (SWK), 2001 WL 1029053, at *3-5 (S.D.N.Y. Sept. 6, 2001) (same).

The proof offered by the Government at the criminal trial satisfied the elements for the First and Second Causes of Action.  As set forth above, the evidence at the criminal trial established that Pierre acted with the requisite scienter in making material misstatements and omissions to induce individuals to invest by purchasing securities.  That evidence established, *inter alia*, that Pierre guaranteed his Amongst Friends and Franchise investors that they would receive unrealistically high returns, which could not be attained.  *See Lorenzo v. SEC*, 587 U.S. 71, 74 (2019) (concluding that defendants "who disseminate false or misleading statements to potential investors with the intent to defraud[] can be found to have violated [*inter alia*] § 10(b) of the Securities Exchange Act of 1934 . . . and § 17(a)(1) of the Securities Act of 1933").  Indeed, the jury returned a guilty verdict in connection with both securities fraud counts, finding proof beyond

a reasonable doubt that Pierre violated Section 10(b) and Rule 10b-5 with respect to the two investment schemes.  Trial Tr. at 1203.  Judge Stein upheld the sufficiency of the evidence to support that verdict, *see United States v. Pierre*, No. 19 Cr. 783 (SHS), 2021 WL 4150969, at *3-5 (S.D.N.Y. Sept. 13, 2021), as did the Second Circuit on appeal, *see Pierre*, 2024 WL 676373, at *1-3.

Pierre also had a full and fair opportunity to litigate the evidence and legal issues related to his criminal conviction for violating Section 10(b).  He proceeded to trial in the criminal case facing significant exposure, he was represented by counsel at that trial, and through counsel he presented a vigorous defense, cross-examining the Government's witnesses, *see* Trial Tr. at 122-157, 173-182, 199-206, 241-309, 325-329, 358-368, 437-445, 496-509, 577-641, 650-656, 683-699, 731-740, 784-821, 828-832, 874-887, presenting witness testimony in his case-in-chief, *see id.* at 913-1008, and delivering a thorough closing argument, *see id.* at 1118-1171.  Pierre's counsel also challenged the sufficiency of the Government's proof, moving under Federal Rule of Criminal Procedure 29 for a judgment of acquittal after the close of the Government's case, *see id.* at 904-908, and filing a renewed Rule 29 motion post-trial, both of which Judge Stein denied.  *See id.* at 906; *Pierre*, 2021 WL 4150969, at *3-5.  Pierre then appealed his conviction, which the Second Circuit rejected as well.  *See Pierre*, 2024 WL 676373, at *1-3.  This clearly satisfies the full and fair opportunity to litigate prong.  *See SEC v. Tandem Mgmt. Inc.*, No. 95 Civ. 8411 (JGK), 2001 WL 1488218, at *11 (S.D.N.Y. Nov. 21, 2001) (holding that the defendant had a full and fair opportunity to litigate the issues in a criminal trial "where [defendant] faced severe penalties and had every incentive to contest vigorously the charges against him"; where the defendant "was also given the full panoply of criminal procedural safeguards, including a standard of proof that was more favorable to him than in these civil proceedings"; and where the defendant's criminal trial

17

"which was held before a jury, took considerable time and involved numerous witnesses and evidence").

Having established all elements of collateral estoppel, the SEC is entitled to summary judgment against Pierre on the First and Second Causes of Action, under Section 17(a) of the Securities Act and under Section 10(b) of the Exchange Act and Rule 10b-5, respectively.

## B.    Remedies

"Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996).  Here, the SEC seeks as remedies a permanent injunction enjoining Pierre from committing future violations of Section 17(a) of the Securities Act and of Section 10(b) of the Exchange Act and Rule 10b-5, as well as disgorgement of his illicit gains with prejudgment interest, with those amounts satisfied by the restitution and forfeiture that Judge Stein ordered Pierre to pay in his criminal case.  *See* SEC Br. at 17-21.

### 1.    Permanent Injunction

Both the Securities Act and the Exchange Act authorize the SEC to seek injunctive relief to prevent future violations of those laws.  15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d)(1); *see SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998) ("Injunctive relief is expressly authorized by Congress to proscribe future violations of federal securities laws.").  The Second Circuit has instructed that to establish its entitlement to such injunctive relief, the SEC must demonstrate a "substantial likelihood of future violations of illegal securities conduct." *Cavanagh*, 155 F.3d at 135.  When determining whether there is a substantial likelihood that a defendant who was found liable of securities violations will violate the securities laws again in the future, courts consider:

"(1) the degree of scienter involved; (2) the isolated or persistent nature of the past fraudulent acts; (3) the defendant's appreciation of his wrongdoing; and (4) the defendant's opportunities to commit future violations."[5]   *SEC v. Opulentica, LLC*, 479 F. Supp. 2d 319, 329 (S.D.N.Y. 2007); *see Cavanagh*, 155 F.3d at 135.

On balance, these factors powerfully weigh in favor of a permanent injunction.  First, the evidence of Pierre's scienter is overwhelming.  In the Amongst Friends Investment Scheme, Pierre solicited investors to purchase the Notes with promises of high returns and continued doing so even after suffering significant investment losses, while knowing, or being reckless in not knowing, that his investors could not be paid the promised returns.  Pierre furthered this scheme by paying investors from money he misappropriated from both new investors and his employer. In the Franchise Investment Scheme, Pierre induced investors to purchase partnership interests in the fast-food Franchises by again promising exorbitant and unattainable returns.  He made these promises despite receiving financial statements for the Franchises that showed minimal profits in prior years and lacking any reasonable basis to believe the Franchises would turn profits that could pay the exorbitant promised return.  As the Second Circuit summarized in holding that the Government presented sufficient evidence of Pierre's scienter:

> There was sufficient evidence from which a rational jury could conclude that Pierre intended to defraud his investors in connection with his Amongst Friends [Investment] and [Franchise Investment] schemes.  The evidence established that Pierre, *inter alia*, deposited investor money from the Amongst Friends scheme into his personal accounts and paid personal bill shortly thereafter; lied to investors about how many [fast-food] stores he had purchased; and asked investors to lie to the authorities about how much they had invested with him after Pierre learned he was being investigated by law enforcement agents.

*Pierre*, 2024 WL 676373, at *3.

---

[5] Because this remedy is derived from statute, the SEC is not required to demonstrate irreparable harm.  *See SEC v. Mgmt. Dynamics, Inc*., 515 F.2d 801, 808 (2d Cir. 1975).

This evidence demonstrates not only a high degree of scienter on the part of Pierre, but also that his fraudulent conduct was not an "isolated" incident.  Pierre's commission of securities fraud entailed a course of continuous conduct which lasted for years, involved two separate schemes, and victimized hundreds of investors.  Furthermore, Pierre's letter to Judge Stein prior to sentencing did not reflect full appreciation of his past wrongdoing.  Though he expressed "remorse for [his] actions" and acknowledged that his conduct was "wrong," Pierre did not admit to violating the securities laws, nor did he describe the nature of his wrongful conduct.  Criminal Dkt. 103-1 at 3-4.  Finally, upon Pierre's release from custody after serving his eighty-four-month term of imprisonment, he might again be in a position to commit further violations of the securities laws.  *Cf. SEC v. Hansen*, No. 13 Civ. 1403 (VSB), 2017 WL 1298022, at *7 (S.D.N.Y. Mar. 31, 2017) ("While Hansen does not appear to be in a position to participate in future violations of the securities laws, due in part to his current period of incarceration and other measures put in place through supervised release or the SEC, it is not outside the realm of possibility.  Therefore, an injunction preventing Hansen from future violations of the securities laws is warranted.").

The SEC therefore has established a likelihood that, unless enjoined, Pierre will continue to violate federal securities laws.  Accordingly, the Court permanently enjoins Pierre from future violations of Section 17(a) of the Securities Act and of Section 10(b) of Exchange Act and Rule 10b-5.[6]

---

[6] As the Honorable Richard J. Sullivan observed in *SEC v. Contorinis*, "[a]s a practical matter, one might question the benefit of enjoining conduct that is already prohibited by the federal securities laws."  No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *4 (S.D.N.Y. Feb. 3, 2012).  Nonetheless, as Judge Sullivan did there, this Court grants a permanent injunction upon finding the relevant factors satisfied.

### 2.   Financial Relief

The SEC additionally requests that the Court order the disgorgement from Pierre of ill-gotten gains and prejudgment interest thereon, pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Sections 21(d)(3) and 21(d)(7) of the Exchange Act, 15 U.S.C. § 78u(d)(3), (d)(7).  A district court has broad discretion in ordering disgorgement of profits from violating federal securities laws and, if ordered, in calculating the disgorgement amount.  *See First Jersey Sec.*, 101 F.3d at 1474-75.  "The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws."  *Id.* at 1474.  "[D]isgorgement forces a defendant to account for all profits reaped through his securities law violations and to transfer all such money to the court."  *Cavanagh*, 445 F.3d at 117.  "In determining the amount of disgorgement to be ordered, a court must focus on the extent to which a defendant has profited from his [violation]."  *SEC v. Universal Express, Inc.*, 646 F. Supp. 2d 552, 563 (S.D.N.Y. 2009), *aff'd*, 438 F. App'x 23 (2d Cir. 2011).

The SEC requests disgorgement in the amount of $1,708,227.32 and $339,733.58 in prejudgment interest.  The disgorgement figure matches the net amount that Judge Stein determined Pierre obtained from investors—reflecting the total investments minus funds Pierre returned to investors—while the prejudgment interest amount represents interest calculated on the disgorgement figure at the IRS underpayment rate from 2017 until 2021.  *See SEC v. Contorinis*, 743 F.3d 296, 308 (2d Cir. 2014) ("Prejudgment interest on a disgorgement amount is intended to deprive the wrongdoer of the benefit of holding the illicit gains over time by reasonably approximating the cost of borrowing such gain from the government.").  The SEC requests that this award of disgorgement and prejudgment interest be deemed satisfied by the restitution and forfeiture that Pierre was ordered to pay in the criminal case.

Because the requested disgorgement reflects the net amount Pierre obtained from investors, because Pierre does not dispute the SEC's calculation nor has he offered any argument for why he should not be ordered to disgorge his ill-gotten gains, and because Pierre was ordered in the criminal case to pay restitution and forfeiture arising from the same conduct in a total amount that exceeds the requested disgorgement and prejudgment interest, the Court grants the financial relief sought by the SEC. The Court orders disgorgement and prejudgment interest in the amounts of $1,708,227.32 and $339,733.58, respectfully, with those amounts deemed satisfied by the restitution and forfeiture ordered in Pierre's criminal case.

## IV.  Conclusion

For the foregoing reasons, the Court grants Plaintiff Securities and Exchange Commission's motion for summary judgment as to its First and Second Causes of Action against Defendant Ruless Pierre, and dismisses the Third Cause of Action against Pierre without prejudice. The Court further dismisses without prejudice all claims against Relief Defendant R. Pierre Consulting Group, LLC. As relief, the Court grants the SEC's requests for entry of a permanent injunction against Pierre, as outlined above, and disgorgement and prejudgment interest in the amounts of $1,708,227.32 and $339,733.58, respectfully, with those amounts deemed satisfied by the restitution and forfeiture ordered in Pierre's criminal case. The SEC is directed to submit a proposed Judgment in accordance with this determination within ten days of the issuance of this Opinion and Order. The Clerk of the Court is respectfully directed to close the motion pending at Docket 47.

SO ORDERED.

Dated: May 6, 2024
      New York, New York
                                      JOHN P. CRONAN
                              United States District Judge